**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Maddison W., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 19 CV 50072 |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maddison W.[1] brings this action under 42 U.S.C. § 405(g) challenging the denial of disability benefits. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the ALJ's decision is affirmed.

## I. Background

Plaintiff is 43 years old. She filed for disability insurance benefits and supplemental security income in September 2015, alleging disability beginning June 15, 2014 based on her back, neck, shoulder, arm, and hand pain as well as depression and anxiety. Because Plaintiff's appeal is based on the step two determination and the weight given to Dr. Anatoly Rozman's and Dr. Tyler Gunderson's opinions, the Court will confine the background to the medical history relevant to those issues.

Plaintiff has had back pain since 2011. Before the alleged onset date, Dr. Todd Alexander performed a L5-S1 fusion in November 2011. R. 707. In January 2014, Plaintiff went to the

---

[1] The administrative record shows that Plaintiff's previous name was Michael. Plaintiff has since legally changed her name, and her preferred pronoun is she/her. The Court will use this pronoun throughout the opinion.

emergency room for neck and left shoulder pain after pulling apart 300-pound doors and lifting 100 pounds. R. 514. Plaintiff worked as a machine operator.

In the following month, Dr. Rozman, a board-certified physical medicine and rehabilitation specialist, noted on physical examination that Plaintiff had pain to palpation of the facet joints at C6-7 on the left side as well as swelling. Muscle stretch reflex was decreased at the triceps and preserved in the biceps and pronator. There was mild weakness on extension of the left elbow as well as abduction of the left shoulder to 5-/5 to 4+/5. She had pain to palpation of the upper thoracic muscle on the left side. She also had pain on palpation of the left shoulder. Empty can, lift-off and drop tests were negative. Dr. Rozman diagnosed Plaintiff with cervicalgia/cervical disc disease/cervical radiculopathy. R. 640. He ordered an MRI, ordered Plaintiff off work and adjusted her pain medications. *Id.*

The MRI of the cervical spine, performed in March 2014, showed no disc herniation or spinal canal stenosis and mild, if any, narrowing of the neural foramina at C5-6. R. 639. Dr. Rozman conducted a nerve conduction study on March 12, 2014, which revealed no strong electrodiagnostic evidence of cervical radiculopathy, very mild carpal tunnel on the left side as well as very mild radial nerve neuropathy on the left side. Plaintiff had 7/10 pain in her neck with pain on palpation of her cervical paraspinal muscles. She also had a positive compression test, spasm of the cervical paraspinal muscles and pain on extension of the cervical spine more than 10 degrees, especially on the left side. Dr. Rozman's diagnosis was cervical facet joint disease, recurrent carpal tunnel syndrome and mild radial nerve neuropathy. R. 635. He ordered Plaintiff off work, continued her pain medications and ordered physical therapy. On April 22, 2014, Dr. Rozman noted Spurling's Maneuver and Hoffmann's test were positive. Plaintiff had

2

pain to palpation of the cervical paraspinal muscle with spasm. Strength in her upper and lower extremities was 5-/5. She was referred to Dr. Alexander, a neurosurgeon, for a consultation.

In April 2014, Plaintiff saw Dr. Alexander who opined that her recent MRI was essentially normal and noted a past May 2013 MRI that showed some mild spondylosis but was not significant. R. 631. Plaintiff complained of pain in her neck and left upper extremity as well as numbness and tingling in the left hand. Her left arm gets weak with any activity and she has difficulty going up stairs. On examination, she had voluntary decreased range of motion in all directions. She had no observable muscle tenderness on her cervical spine, her motor strength was 5/5, she had negative Hoffmann's sign and sensation was intact. Dr. Alexander could not explain Plaintiff's symptoms and did not think Plaintiff suffered any significant work-related injury. *Id.*

In June 2014, pain specialist Dr. Howard Weiss examined Plaintiff. He assessed that Plaintiff had symptoms consistent with a left lower cervical radiculitis, but that Plaintiff was neurologically normal and there was no abnormality on the MRI that explained her complaints. However, Dr. Weiss administered pain injections. R. 721. Dr. Morris Marc Soriano, a neurosurgeon, performed a medical evaluation in October 2014 in relation to Plaintiff's workman's compensation claim. He opined that Plaintiff did not require any further treatment and was capable of a full return to work. R. 1060.

With Dr. Rozman coordinating Plaintiff's treatment plan, Plaintiff participated in physical therapy, received several injections, and was trialed on several pain medications including Zohydro, Methadone, Norco and Opana. R.616, 617, 622, 625. On May 25, 2015, Dr. Rozman ordered an MRI of Plaintiff's left shoulder. It revealed a glenoid labrum anterior superior tear with communicating paralabral cyst of 5-6 mm size extending into the

3

coracohumeral ligament, but a normal rotator cuff. R. 604. Dr. Rozman referred Plaintiff to an orthopedic surgeon specializing in labra tear/shoulder problems.

In December 2015, Plaintiff underwent a physical consultative examination conducted by Dr. K.P. Ramchandani. On physical examination, Plaintiff had a reduced range of motion of the cervical spine, lumbar spine, bilateral hips, and left shoulder. She had positive straight leg raises at 60 degrees on the right and 45 degrees on the left. There was reduced sensation to touch and pinprick in the little fingers bilaterally, right ring finger, lateral aspect of the left leg and dorsum of the left foot. Plaintiff retained a normal gait, was able to walk on heels and toes, was unable to squat, had 5/5 strength in all extremities and 5/5 grip strength bilaterally. She was able to make a fist, pick up objects, open and close the door, oppose the thumb to fingers, and flip pages. R. 645-51. Plaintiff was diagnosed with disc disease of the lumbar spine with radiculopathy of the left lower extremity, labral tear of the left shoulder, spondylosis of the cervical spine, bilateral ulnar neuritis, anxiety and obesity. R. 646.

In March 2017, Plaintiff was evaluated again for possible surgical intervention by Dr. Tyler Gunderson, an orthopedic surgeon. Plaintiff complained of bilateral shoulder pain, left greater than right. On physical examination, Plaintiff's bilateral shoulders had full active and passive range of motion, and no evidence of crepitus or instability. She had a negative drop arm sign. She had 5/5 supraspinatus strength bilaterally. She had a positive Speed test with more pain with resistance in forward elevation in a supinated position than in a pronated position. Dr. Gunderson started her on physical therapy and gave her an injection into the left shoulder. She was to come back in 6 weeks to evaluate the effectiveness of the injection and physical therapy. Plaintiff returned to Dr. Gunderson on April 12, 2017. She reported that the injection helped for only about 4 weeks. Plaintiff discussed going forward with a labral repair of her left shoulder

versus a tenotomy with labral debridement. Dr. Gunderson ordered a right shoulder MRI, and Plaintiff was to schedule her left shoulder surgery at her discretion. R. 791. She returned on April 19, 2017 for a follow up on her right shoulder MRI. She reported that her left shoulder injection did not result in any significant pain reduction. Dr. Gunderson noted that the April 2017 MRI of Plaintiff's right shoulder was "somewhat equivocal." R. 786. There was no rotator cuff tear, small possible superior labral tear, but no other major findings. He noted that Plaintiff reported that she had most of her symptoms when her arms were abducted, such as when riding her motorcycle or with traction on her arms. Thus, Dr. Gunderson was concerned that she may have a variant of thoracic outlet syndrome. He was going to send Plaintiff to a vascular surgeon for further evaluation before proceeding with shoulder surgery.

On April 19, 2017, Dr. Gunderson also filled out a functional capacity form. Dr. Gunderson opined that Plaintiff could lift up to 5 pounds frequently, occasionally lift up to 10 pounds, and rarely lift 15 pounds or more. Plaintiff could sit for 8 hours and stand for 4 hours in an 8-hour workday. She would have to take 2 or 3 breaks, each lasting 10 to 15 minutes, during the workday. She could use her bilateral hands 50 percent of the time, use her fingers 60 percent of the time, and use her arms 10 percent of the time. Plaintiff would be off task more than 30 percent of the workday and would be absent or unable to complete a full workday 5 days or more per month. R. 787-88.

From February 2014 to September 2015, Dr. Rozman provided numerous opinions indicating that Plaintiff could not do full-time work. For example, in February 2014 Dr. Rozman advised that Plaintiff should be taken off work because it was not safe for her to do her job because she operated heavy machinery. R. 640. In May 2014, Dr. Rozman opined that Plaintiff could only perform light work but could not do it for more than 40 hours per week. R. 626-27. In

5

June 2014, Dr. Rozman stated that Plaintiff should not perform any lifting, pushing, carrying, or above-the-shoulder activities. R. 625. Later in November, he opined that Plaintiff could return to work but only for 4 hours per day for 2 months with no pushing or lifting more than 25 pounds. R. 1123. In February 2015, Dr. Rozman said that Plaintiff exhausted her conservative treatment and would not be able to return to work until she sees an orthopedic surgeon. R. 605. Then in August and September 2015, Dr. Rozman opined that Plaintiff was unable to return to work until her labral tear was fixed. R. 610-11.

      Later in March 2017, Dr. Rozman filled out a functional capacity form. He opined that Plaintiff could frequently lift 5 pounds, occasionally lift 10 to 15 pounds and never lift 20 pounds or more. Plaintiff could walk one city block without rest or severe pain but could not walk one block or more on rough or uneven ground. She should have no problems stooping, crouching, or bending. She could sit for 3 hours in an 8-hour workday. She could stand and walk for less than one hour in an 8-hour workday. She would need a 5-minute unscheduled break after every 30 minutes during the workday. She would need the use of a cane for uneven/sloped surfaces. Plaintiff could use her bilateral arms for reach 20% of the workday but would have no limitations in the ability to use her bilateral hands or fingers. Plaintiff would be off task more than 30% of the workday and would be absent from work 5 or more days per month and unable to complete an 8-hour workday 5 or more days per month. R. 815-16.

      The administrative law judge (ALJ) held an administrative hearing on June 1, 2017. Since her work injury, Plaintiff testified that she has participated in physical therapy, received several injections, and has taken numerous pain medications. Her neck and shoulder pain increased over time, and she has pain in both shoulders. While Plaintiff testified that she could still function when her lower back pain is at its worst, she stated that exacerbations of her

6

neck/shoulder pain occur once or twice per week and make her immobile. She was not taking as much pain medication at the time of the hearing because she could not tolerate it due to side effects like fatigue. She testified that her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and remember and complete tasks. She could not bend over to take dishes out of the dishwasher or reach up to put dishes away. She could lift a half gallon of milk but could not lift or carry 8 pounds.

    She further testified that she could perform a sit-down job but would be limited by neck and shoulder pain. She said that her shoulder and neck would flare up after 5 minutes of typing. She also said that she plays videogames with her older daughter despite her symptoms. Regarding her daily activities, Plaintiff testified that she cared for her infant daughter, including feeding her bottles, changing her diapers, and carrying her in a fabric sling. Plaintiff also reported some activities such as hopping out of the bed of a truck, assisting her stepfather in performing an oil change, and playing videogames.

    On November 22, 2017, the ALJ issued her written opinion denying disability insurance benefits and supplemental security income. The ALJ found the following severe impairments: degenerative disk disease, degenerative joint disease, and depression. The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work. She can occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs but never climb ladders, ropes and scaffolds. Plaintiff can occasionally push/pull and overhead reach with the left upper extremity and frequently push/pull and overhead reach with the right extremity. She must avoid concentrated exposure to extreme temperatures, wetness, and hazards of unprotected heights and moving, dangerous machinery. She can learn, understand, remember, and carry out simple, routine, and repetitive tasks and sustain them in 2-hour increments throughout the typical

7

workday. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Thus, the ALJ found that Plaintiff was not disabled. Plaintiff now appeals the ALJ's decision.

## II. Standard of Review

The reviewing court reviews the ALJ's determination to see if it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the reviewing court takes a very limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). An ALJ only needs to "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). But even when adequate record evidence exists to support the ALJ's decision, the decision will not be affirmed if the ALJ does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5-7 (N.D. Ill. Oct. 29, 2014).

### III. Discussion

Plaintiff challenges the ALJ's step two determination and the weight given to Dr. Rozman's and Dr. Gunderson's opinions. She also alleges that the ALJ impermissibly played doctor. At the outset, the Court notes that many of Plaintiff's arguments for remand are both undeveloped and unclear. It is not for this Court to develop Plaintiff's arguments or comb through the record to find support. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) (explaining that it is not the court's responsibility to research and construct the parties' arguments); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (finding perfunctory and undeveloped arguments forfeited.) Accordingly, the Court will address only the specific issues raised in Plaintiff's opening brief and will not speculate as to possible arguments Plaintiff was attempting to make. *See Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (noting that the claimant has the "burden to show that the ALJ's decision is not supported by substantial evidence"). The Court will address Plaintiff's arguments sequentially.

#### A. Step Two Analysis

Plaintiff first argues that the ALJ erroneously omitted carpal tunnel syndrome from Plaintiff's list of medically determinable impairments. At step two of the sequential analysis the ALJ is required to determine whether the claimant has an impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The burden is on the claimant to prove that an impairment is severe. *Zurawski v. Halter,* 245 F.3d 881, 885-86 (7th Cir. 2001).

The Commissioner argues that it was only necessary for the ALJ to find one severe impairment before proceeding with the sequential analysis. The Commissioner is correct. "As

9

long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010). This step two determination of severity is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). Here, the ALJ found the following severe impairments: degenerative disc disease, degenerative joint disease, and depression. R. 19. The ALJ met this threshold requirement by finding at least one severe impairment and moved on to the next step.

Despite Plaintiff's assertions, *Thomas v. Colvin*, 826 F.3d 953 (7th Cir. 2016) does not support her position. In *Thomas*, the Seventh Circuit remanded in part because the ALJ failed to include the plaintiff's fibromyalgia as a medically determinable impairment. *Thomas*, 826 F.3d at 961. The ALJ did not find any severe impairments and denied benefits without continuing through the remaining steps. *Id.* at 958. In contrast, the ALJ here found three severe impairments and moved on to the remaining steps. Therefore, *Thomas* does not apply in this case.

Moreover, even if there had been an error at step 2 by finding that Plaintiff's carpel tunnel syndrome was not a severe impairment, any error is harmless so long as the ALJ goes on to address the impact of a claimant's severe and non-severe impairments. *See*, *e.g.*, *Dorothy* v. *Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *2 (N.D. Ill. May 31, 2019). The ALJ did so here with regard to Plaintiff's carpal tunnel. The ALJ pointed to Dr. Rozman's conclusion that the testing he performed revealed only "very mild" carpel tunnel in the left hand. R 20, 940. The ALJ also relied upon the December 2015 physical examination, which revealed that Plaintiff's grip strength was 5/5 bilaterally, she was able to make a fist, pick up objects, open and close the door, oppose the thumb to fingers, flip pages and had a full range of motion in the bilateral wrists. R. 20.

Plaintiff argues that the ALJ failed to consider Plaintiff's complaints of intermittent numbness in the left arm and fingers. As the Commissioner points out, however, these complaints, even if fully accepted by the ALJ[2] did not establish functional limitations. Despite these complaints, Plaintiff still had the above referenced normal hand and wrist findings. Thus, the ALJ did not commit error at step 2.

### B. Weight Given to Treating Physician Opinions

Next, Plaintiff argues that the ALJ failed to follow the treating physician rule[3] in evaluating the weight to give to the opinions of Dr. Rozman and Dr. Gunderson. Both physicians opined that Plaintiff would have significant lifting restrictions as well as other functional capacity limitations. R. 787-88, 815-16. The treating physician rule has been described as a two-step process. *See Wallace v. Colvin*, 193 F. Supp. 3d 939, 946 (N.D. Ill. 2016); *Duran v. Colvin*, No. 13 CV 50316, 2015 WL 4640877, at *8 (N.D. Ill. Aug. 4, 2015). First, the ALJ must determine whether to give the treating physician's opinion "controlling weight," by evaluating if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Second, if the ALJ decides not to give controlling weight to a treating physician's opinion, she must evaluate certain

---

[2] The ALJ found that Plaintiff's statements about debilitating symptoms were not entirely consistent with the evidence. R. 28. Plaintiff does not contest this finding in her briefing.
[3] The Social Security Administration modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *Compare* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."), *with* 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2015. Accordingly, the ALJ was required to apply the treating physician rule when deciding Plaintiff's application.

11

checklist factors in order to determine how much weight to give to the opinion. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Those factors are: length of treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c). A treating physician has greater familiarity with a plaintiff's conditions and circumstances, and therefore an ALJ may only discount a treating physician's opinion based on "good reasons" supported by substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Clifford*, 227 F.3d at 870.

Plaintiff argues that the ALJ erred at the second step of the treating physician rule by failing to consider the checklist factors under 20 C.F.R. § 404.1527(c). The Commissioner counters that: 1) the ALJ was not required to consider every single one of the checklist factors so long as the decision makes clear that the ALJ was aware of and considered many of the factors; and 2) any error in failing to consider all of the factors was harmless.

This Court has previously pointed out there are two distinct lines of cases in the Seventh Circuit addressing whether the ALJ must explicitly consider the checklist factors. True, there are some cases where the Seventh Circuit has not required the ALJ to explicitly consider the checklist factors. *See, e.g.*, *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018); *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). Under this line of cases, the ALJ does not need to explicitly consider every factor but must "sufficiently account[] for the factors[.]" *Schreiber*, 519 F. App'x at 959. However, there is a more restrictive line of cases where the Seventh Circuit has required the ALJ to *explicitly* consider the factors. *See, e.g.*, *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *see also Duran*, 2015 WL 4640877, at *8-10 (describing the genesis of these two distinct lines of cases). In this Court's view, the failure to explicitly analyze each checklist factor is itself a ground for a

12

remand. *See, e.g.*, *Kathy P. v. Saul*, No. 18 CV 50295, 2020 WL 2571899, at *5 (N.D. Ill. May 21, 2020). However, failing to address every single checklist factor may not require a remand if the unconsidered factors do not support giving greater weight to the treating physician's opinion. *See Collins*, 743 F. App'x at 25.

### 1. Dr. Rozman

In a single paragraph, Plaintiff argues that the ALJ erred in her decision to give little weight to the opinion of Dr. Rozman. The ALJ listed seven reasons supporting her decision. R. 26-27. Those reasons included that Dr. Rozman's opinions were internally inconsistent in that he periodically increased and decreased Plaintiff's limitations without explanation or recitation to objective evidence; Dr. Rozman was a pain management specialist and he based his opinions primarily upon Plaintiff's subjective complaints of pain; his opinions were contradicted by his own treatment notes which reflect improvement in Plaintiff's condition; his opinions were contradicted by diagnostic testing including the electromyography and nerve conduction study of Plaintiff's left upper extremity and the MRIs of Plaintiff's cervical spine and bilateral shoulders; and his treatment records included references to Plaintiff performing activities outside the scope of Dr. Rozman's listed limitations. *Id.*

Plaintiff does not address any of these reasons in her briefing nor does she argue that these reasons do not constitute substantial evidence supporting the weight she gave to Dr. Rozman's opinion.[4] She argues only that if the ALJ had applied the checklist factors required by step two of the treating physician rule, she would have had to acknowledge that Dr. Rozman had

---

[4] Plaintiff does make one brief statement that "Dr. Rozman's records consistently reflect that plaintiff's symptoms did not significantly improve with multiple treatments, including physical therapy (TR. 428) and trigger point injections." Plaintiff's Brief at 6, Dkt. 14. However, Plaintiff's single record citation to a prescription for physical therapy does not support this statement, and Plaintiff does not cite to any other evidence in the record for support.

13

been Plaintiff's treating physician for over seven years. However, as the Commissioner points out, Plaintiff does not argue how this fact would have overcome the seven specific basis the ALJ gave for discounting Dr. Rozman's opinion.[5] Thus, while the ALJ failed to explicitly discuss the length of Dr. Rozman's treatment, in light of the seven unrebutted basis given by the ALJ in support of her decision to given little weight to Dr. Rozman's opinions, this Court believes that such error was harmless. *See, e.g., Matheson v. Berryhill*, No. 16 CV 50356, 2018 U.S. Dist. LEXIS 9245, at *10 (N.D. Ill. Jan. 22, 2018).

## 2. Dr. Gunderson

Plaintiff also alleges that the ALJ erred in giving little weight to Dr. Gunderson's opinions. The ALJ gave the following reasoning for assigning little weight to Dr. Gunderson's opinion: "his opinion is inconsistent with his treatment records, which note an equivocal MRI of the right shoulder and a physical examination that was essentially normal except for a positive speed test[.]" R. 27. Specifically, the ALJ pointed to Dr. Gunderson's physical examination findings, which revealed a positive speed test but that Plaintiff retained a full active and passive range of motion in her bilateral shoulders with no evidence of crepitus or instability, a negative drop arm sign and 5/5 superspinatus strength bilaterally.

The ALJ's reasoning addresses consistency and supportability, two of the five regulatory factors. Like her argument regarding Dr. Rozman, Plaintiff does not address the ALJ's stated reasons for discounting Dr. Gunderson's opinions. Instead, she argues that the ALJ erred in not explicitly addressing all five of the checklist factors. It is true that the ALJ did not explicitly address the length or frequency of the treatment relationship. However, it appears that Plaintiff saw Dr. Gunderson only three times from March 8, 2017 to April 19, 2017. R. 786, 791, 810.

---

[5] Moreover, Plaintiff failed to respond to the Commissioner's argument, and in fact she omitted any argument related to the weight given to Dr. Rozman's opinion in her reply brief.

14

This relatively short longitudinal relationship does not support the argument that greater weight should have been given to Dr. Gunderson's opinion. In fact, Plaintiff does not argue in her briefing that the length of treatment supports giving greater weight to Dr. Gunderson's opinions.

Plaintiff does argue that because Dr. Gunderson was a specialist, performed physical examinations and determined that Plaintiff's symptoms were consistent with thoracic outlet syndrome, these factors should have been considered. However, Dr. Gunderson was an orthopedic surgeon. He was originally going to perform surgery on Plaintiff's left shoulder to repair the torn labrum, but then decided not to perform such surgery when it appeared that Plaintiff's shoulder symptoms worsened only when she performed activities such as riding her motorcycle. R. 786. Dr. Gunderson felt that Plaintiff's symptoms may be consistent with a variant of thoracic outlet syndrome. Dr. Gunderson was not a specialist in this syndrome, and as such he referred Plaintiff to a vascular specialist. No records from a vascular surgeon appear in the record. To the extent that Plaintiff's symptoms were caused by thoracic outlet syndrome, any functional limitations caused by such condition would be outside Dr. Gunderson's specialty, and thus this factor does not support greater weight being given to Dr. Gunderson's opinion. In fact, this factor may be an additional basis for discounting Dr. Gunderson's opinions. Thus, this Court is confident that if this case were remanded and if the ALJ then explicitly applied the treating physician rule to Dr. Gunderson's opinions, she would reach the same result. *See, e.g., Matheson*, 2018 U.S. Dist. LEXIS 9245, at *10.

### C. Playing Doctor

Finally, Plaintiff argues that the ALJ "played doctor" by relying on Plaintiff's right shoulder MRI to discredit Dr. Gunderson's opinion. This is the only example of "playing doctor" that Plaintiff refers to in her opening brief. Thus, this Court will confine its analysis to the MRI.

15

Plaintiff's brief states: "The ALJ stated that plaintiff'[s] shoulder MRI would discredit Dr. Gunderson's opinion, but Dr. Gunderson clearly explained that plaintiff['s] presentation was potentially consistent with thoracic outlet syndrome." Plaintiff's Brief at 6-7, Dkt. 14. She then cites to *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) for the proposition that "it is an error for an ALJ to make conclusions based on MRI findings." *Id.*

There are several problems with this very brief argument. First, it is undeveloped. Is Plaintiff arguing that an ALJ may never rely on an MRI result to discredit a treating physician's opinion? Is she arguing that the ALJ improperly interpreted the MRI? Is she arguing that the MRI was consistent with thoracic outlet syndrome? It is unclear from this brief argument. Undeveloped arguments are forfeited. *See Crespo*, 824 F.3d at 674.

Forfeiture aside, the Commissioner correctly notes that the ALJ is required to determine whether the treating doctor's opinion is supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(c)(2). Moreover, the ALJ did not interpret the MRI. She merely repeated the MRI findings as set forth by the interpreting radiologist, R. 789, and the interpretation given by Dr. Gunderson. R. 786 ("[Her] MRI is somewhat equivocal. There is no rotator cuff tear, small possible superior labral tear, but no other major findings."). Both refer to the right shoulder MRI as "equivocal." Simply paraphrasing the impression of the doctor who reviewed an MRI is not improper "doctor playing." *See, e.g.*, *Michael B. v. Berryhill*, No. 18 C 236, 2019 WL 2269962, at *7 (N.D. Ill. May 28, 2019); *Turner v. Astrue*, 390 Fed. App'x. 581, 584-85 (7th Cir. 2010); *Brown v. Barnhart*, 289 F. Supp. 2d 773, 791 (E.D. Wis. 2004) ("However, the ALJ did not interpret the MRI; she simply paraphrased the impression of [the doctor] who reviewed the MRI….While

16

ALJs are forbidden to play doctor and make their own medical findings, they must discuss and weigh the medical evidence.")

## VI. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The decision of the Commissioner is affirmed.

Date: September 9, 2020          By:         _____
                                                     Lisa A. Jensen
                                                     United States Magistrate Judge